**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

OTERO COUNTY HOSPITAL
ASSOCIATION, INC. d/b/a CHRISTUS
SOUTHERN NEW MEXICO (f/k/a GERALD
CHAMPION REGIONAL MEDICAL CENTER),

Plaintiff,

v. Civ. No. 25-1 DHU/GBW

GALLAGHER BASSETT SERVICES, INC.
f/k/a WESTERN LITIGATION, INC.,
d/b/a GB HEALTHCARE and VANTAGE
RISK SPECIALTY INSURANCE,

Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant Gallagher Basset Services, Inc.'s ("GB") Motion to Compel Otero to Provide Complete Answers to Interrogatories 2, 3, 5, 7, 9, 10, and 12 (*doc. 103*) and Motion to Compel Unredacted Invoices (*doc. 105*).[1] The Court held a hearing on September 10, 2026. *Doc. 153*. Its findings are restated and explained herein.

## I. ANALYSIS

This action was removed to federal court on January 1, 2025. *Doc. 1*. The

[1] The issues presented by the motions were narrowed by stipulation (*docs. 133*, *134*) and by the parties' further agreement as represented in Plaintiff's response brief, *doc. 135* at 2–3.

operative Second Amended Complaint was filed October 13, 2025. *Doc. 44*. The claims arise out of GB's provision of insurance claims management services to Plaintiff Otero County Hospital Association, Inc. ("Otero" or "GCRMC"). Otero operates a non-profit hospital in Otero County, New Mexico. *Id*. at ¶ 12. In March 2017, Otero hired GB[2] to oversee the management and reporting of Plaintiff's incidents and legal claims. *Id*. at ¶ 34. Otero and GB executed a Litigation and Claims Management Services Agreement, which they extended by a First Amendment in March 2020, and by a Second Amendment in March 2023 (as amended, the "Services Agreement"). *Id*. at ¶ 35.

Relevant to Otero's claims, under Section 1 of the Services Agreement, GB agreed to "provide litigation management and claims handling services." *Id*. at ¶ 36. Under Section 1(e), it agreed to "indemnify, pay for the defense of, and hold GCRMC harmless with respect to any claim or demands, . . . actions, damages, costs and expenses resulting from any errors, omissions, torts or other negligent acts or omissions of WLI, its agents, assigns, servants, employees, associates or subcontractors[.]" *Id*. at ¶ 37. Under Section 2(c), GB agreed to employ "qualified and experienced personnel" to perform its duties. *Id*. at ¶ 38. Under Section 2(h), GB agreed to "review and respond in a prompt and timely fashion to all significant correspondence in connection with The Claims and . . . respond to any requests from GCRMC's management or GCRMC's

[2] At the time the agreement was executed, GB operated as Western Litigation, Inc. or "WLI." *Doc. 44* at ¶ 32.

insurers or excess insurers." *Id*. at ¶ 39. Under Section 2(m), GB agreed to "follow any claims handling reporting guidelines established by GCRMC's insurer(s) or excess insurer(s) to satisfy GCRMC's obligations under any such applicable policies." *Id*. at ¶ 40.

Between 2017 and 2023, Otero alleges that GB "failed to report the vast majority of incidents to Plaintiff's insurers, even though Plaintiff was providing timely notice to GB of such incidents" and even though the relevant policies required prompt reporting of any claims. *Id*. at ¶ 52. Otero alleges that GB's failure to perform its notice obligations resulted in multiple insurers issuing denials of coverage or reservations of rights for claims because of the failure to timely notify. *Id*. at ¶ 55. In addition, Otero alleges that GB (1) failed to provide quarterly claim reports as required by at least one insurer, which was cited as a separate and independent basis for denying coverage, *id*. at ¶¶ 68, 71; (2) failed to comply with Otero's express request to provide notice to insurers, *id*. at ¶ 72; (3) put the wrong policy period and insurers on notice for several lawsuits, *id*.; and (4) failed to employ "qualified" personnel because its personnel "did not understand how the insurance tower worked," *id*.

As a result of these failures, Otero alleges it has been forced to pay over $17 million to settle claims that should have been covered by insurance. *Id*. at ¶¶ 75, 77. Otero seeks this amount in compensatory damages as well as attorney fees for (1) its efforts to obtain coverage in the underlying suits, and (2) the investigation and

prosecution of this action. *Id*. at 25. The operative complaint asserts claims for breach of contract, indemnification, and negligence and/or gross negligence against GB.[3] *Id*. at ¶¶ 92–112.

## II. ANALYSIS

As narrowed by the parties' stipulations, three issues remain in dispute: (1) whether Otero must verify its prior interrogatory answers; (2) whether Otero's answers to Interrogatories No. 5 and 7 are complete and responsive; and (3) whether Otero must produce unredacted versions of its law firm invoices from Wick Phillips, Nadler Law, and Nadler Nelson. *See docs. 103*, *105*. The Court addresses each in turn.

### A. Verification of Interrogatories

GB moves to compel verification of all of Otero's answers to its First Set of Interrogatories. Otero first provided answers on July 3, 2025. *See doc. 103-1* at 5. It subsequently provided First Amended answers on November 10, 2025; Second Amended answers on January 13, 2026; and Third Amended answers on April 13, 2026. *See id.* at 10, 13; *doc. 136-1* at 24. The original, First Amended, and Second Amended answers were not verified. The Third Amended answers were verified by David Raff on May 11, 2026.[4] *Doc. 136-2*.

---

[3] Otero also brings a claim for breach of contract against Defendant Vantage Risk Specialty Insurance ("Vantage"). *Doc. 44* at ¶¶ 113–121. Vantage is not involved in the present discovery disputes and this claim is therefore immaterial to the issues at hand.

[4] In its motion, GB argued that the verification of the Third Amended answers is insufficient because there is "no indication" that David Raff is an officer or authorized agent of Otero. *Doc. 103* at 4. This argument was not reprised in the reply or at hearing. *See docs. 143*, *153*. Otero stated in its response

GB argues that Otero should retroactively verify its original, First Amended, and Second Amended answers. It contends that Rule 33 requires interrogatory responses to be answered "under oath," Fed. R. Civ. P. 33(b)(3), and that "[t]here is no exception for an original answer once the interrogatory is amended[.]" *Doc. 103* at 3. In addition, GB argues that it should be "entitled to rely on each interrogatory answer (not just the last one)" for use as evidence at trial. *Doc. 103* at 4; *see*, *e.g.*, *Simon v. Taylor*, Civ. No. 12-96 JB/WPL, 2015 U.S. Dist. LEXIS 64337, at *79 (D.N.M. Apr. 30, 2015) ("Plaintiffs cannot fully rely on th[e] amended answers at trial unless the Simons swear to their accuracy under oath.").

The Court agrees that Rule 33 requires verification of interrogatory responses. *See* Fed. R. Civ. P. 33(b)(3). However, the Federal Rules confer no explicit authority to require post hoc verification of previously-submitted answers which have been subsequently amended and verified. In fact, the Federal Rules permit amendment of interrogatory responses "if the party learns that in some material respect the . . . response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). Compelling verification of prior responses after an amendment would force the responding party to verify, under oath, information that they now know is incomplete and/or incorrect.

---

that Mr. Raff is Vice President, Litigation Counsel at CHRISTUS HEALTH, the parent entity that provides legal services for Otero County Hospital Association, and that CHRISTUS is the sole member of Otero. *Doc. 136* at 4; *see doc. 136-2*; *doc. 136-3* at 6; *doc. 136-4* at 9. To the extent this issue remains in dispute, the Court finds that the Third Amended answers have been adequately verified.

Such a result would illogical. Consequently, if there is a remedy for failing to verify prior interrogatory answers, this Court holds that it is not post hoc verification. *See Lewis v. Activision Blizzard, Inc.*, 2013 U.S. Dist. LEXIS 106634, at *3 (N.D. Cal. July 30, 2013) (holding that a motion to compel verification of prior interrogatory answers was moot because Rule 26 "expressly contemplates that a party may add to or change an answer," and that the prior, unverified response "was no answer at all"); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2012 U.S. Dist. LEXIS 47882, at *7–8 (W.D. Wash. Apr. 4, 2012) (same). While there may be available remedies if a party in bad faith repeatedly fails to verify interrogatory answers before finally verifying amended answers, Plaintiff makes no such alternative argument. For all these reasons, the motion to compel post hoc verification is denied.

**B. Interrogatories No. 5 and 7**

GB moves to compel complete responses to Interrogatories No. 5 and 7 of its First Set of Interrogatories. The Federal Rules require interrogatories to be answered "fully." Fed. R. Civ. P. 33(b)(3); *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."). GB contends that Otero failed to do so here.

1. <u>Interrogatory No. 5</u>

Interrogatory No. 5 reads as follows:

> Plaintiff states in Paragraph 3 of the First Amended Complaint (ECF 25) that "Defendant took on responsibility to ensure that Plaintiff complied

> with the notice and reporting requirements in its liability and medical malpractice insurance policies from 2017 to 2023." Accordingly, please identify and state fully each and every "responsibility" that you contend Defendant owed Plaintiff from 2017 to 2023 concerning insurance notice and/or reporting, stating specifically the nature of the duty you claim; how you contend such duty arose; the rights and responsibilities of Defendant associated with such duty; where such duty was memorialized in writing, if anywhere; and if or how you contend Defendant failed to satisfy such responsibility owed to Plaintiff.

*Doc. 103-1* at 15. Otero's response identified several sections of the Services Agreement under which it argues GB assumed responsibilities; stated that GB assumed responsibility for Otero's litigation and claims management through its conduct over several years, identifying several alleged duties; stated that Otero provided notice of incidents to Brett Coco between 2017 and July 1, 2023; described an incident in summer of 2022 when Plaintiff's counsel learned of a lawsuit where notice was not provided, and requested that GB notify insurers moving forward; and broadly identified several failures on GB's part to fulfill its duties. *Id*. at 16–17.

GB's counsel clarified during the hearing that in their view, Otero's response does not address its basis for asserting that GB was responsible for reporting "incidents," as distinct from "claims." *Doc. 153* at 4. Otero's counsel stated that Otero could amend its interrogatory responses to explain how a course of conduct as to both claims and incidents was established, and to give examples. *Id.* at 5. GB's counsel agreed that it would be acceptable if Otero provided information about the alleged customs and practices related to "incidents" and "loss runs." *Id.*

Accordingly, the Court will require Otero to supplement its response with an accurate and precise general statement about GB's course of conduct, including notable examples during the relevant time period. *See id*. The response should specifically address the course of conduct asserted for "claims," "incidents," and "loss runs." The response need not contain every single instance in a course of conduct, but should be sufficient for GB to have a reasonable idea of the assertion and to fill the gaps with other forms of discovery.

2. Interrogatory No. 7

Interrogatory No. 7 asks Otero to:

> Identify each and every "communication" Plaintiff contends "show [sic] Defendant took on responsibility of providing notice and reporting to Plaintiff's excess liability insurers between 2017 and 2023 for incidents and claims" fully stating who the communication was by and between; whether the communication was oral or in writing; the complete substance of the communication; and the date(s) of each such communication.

*Doc. 103-2* at 14. Otero provided the following response:

> Plaintiff refers Defendant to documents and correspondence produced by Plaintiff wherein Brett Coco, Assistance Vice President for Defendant, informed Plaintiff that he submitted Notices of Loss to insurers as required under the Western Litigation Agreement. For example, Plaintiff refers Defendant to Mr. Coco's email and all attachments produced and Bates-labeled as OTERO-002530 – OTERO-002583. Plaintiff also has been provided numerous correspondence from Defendant prior to filing of the lawsuit wherein Brett Coco provided notice to the insurers (often late or to the wrong insurer). Plaintiff also understands that Brett Coco orally communicated to Lori Hays that it was his responsibility to put the

> insurers on occasion [sic] and Ms. Hays remembers at least two occasions where such statements were made.
>
> Plaintiff also is in the process of collecting emails from the relevant time period and will produce such documents and supplement this response to identify the specific emails. Finally, Brett Coco never represented that he was not responsible for notifying the insurers even after certain notice issues came up.

*Doc. 103-2* at 14.

As stated at the hearing, the Court finds Otero's response to Interrogatory No. 7 is incomplete with respect to the communication involving Ms. Hays. Therefore, the Court will compel a supplement to the response which should include any details Ms. Hays remembers concerning claims, incidents, or any other miscellaneous information and should indicate that at this time, the response constitutes her full testimony and the entirety of her memory. *Doc. 153* at 6.

### C. Redacted Invoices

Finally, GB moves to compel production of Otero's unredacted attorney invoices. Otero seeks as damages the litigation costs and attorneys' fees incurred to investigate and prosecute this action.[5] *Doc. 44* at 25. GB requested damages information and documents in its First Set of Interrogatories on April 28, 2025, and Second Request for Production on August 28, 2025. *Doc. 105* at 3. In response, Otero produced invoices

[5] Otero also seeks litigation costs and attorneys' fees incurred to obtain coverage from insurers who have denied coverage. *Doc. 44* at 25. Otero has already agreed to remove the redactions for this category. *Doc. 135* at 2–3.

from Nadler Law, PLLC, and Nadler Nelson, PLLC. *Id.* at 4; *see doc. 105-9*. However, the invoices contain redactions of specific research topics. Otero asserts opinion work product privilege, arguing that disclosing the research topics would reveal its litigation strategy. *Doc. 135* at 5. GB moves to compel production of the unredacted invoices. *Doc. 105*.

Under the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). As a general matter, federal courts apply state law to determine privilege in diversity cases. *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998) (citing Fed. R. Evid. 501); *see doc. 44* at ¶ 10 (alleging diversity jurisdiction in this case). However, "[w]ork product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)[.]" *Frontier*, 136 F.3d at 702 n.10 (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). Rule 26, which codifies the federal work product doctrine, provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A). "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Relevant to the parties' dispute, the work product doctrine "is intended only to guard against divulging the attorney's strategies and legal impressions," and "does not protect facts concerning the creation of work product or facts contained within the work product." *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (citation omitted).

As stated at the hearing, the Court finds that the requested information is arguably work product and that its disclosure at this time could prejudice Otero. *Doc. 153* at 6–7. However, given the exceptions codified in Rule 26(b)(3), work product protection can be overcome in certain circumstances. The Court agrees that GB will ultimately be entitled to disclosure of the redacted information. Without knowing the topic of the attorney research contained in the invoices, a factfinder would be unable to determine whether that research was recoverable under the contract. However, when balancing GB's need for the precise research topics at this time with the potential of revealing opposing counsel's legal strategy, the Court will not compel disclosure of the redacted information at this time. Consequently, it will deny the motion without prejudice, with the understanding that the documents will eventually need to be

unredacted and disclosed. *Id*. at 7. If counsel cannot reach an agreement, the date for that disclosure will be determined after further argument from counsel.

## III. CONCLUSION

For the foregoing reasons, GB's Motion to Compel Otero to Provide Complete Answers to Interrogatories 2, 3, 5, 7, 9, 10, and 12 (*doc. 103*) is GRANTED IN PART and DENIED IN PART. GB's Motion to Compel Unredacted Invoices (*doc. 105*) is DENIED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE